IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERTO CARRASCO-SALAZAR,

                Plaintiff,                              OPINION AND ORDER

      v.                                      13-cv-11-wmc

GREGG FEARDAY, *et al.*,

                Defendants.

---

    Roberto Carrasco-Salazar, a prisoner proceeding *pro se*, brings this lawsuit against prison officials employed by the Federal Correctional Institution in Oxford ("FCI-Oxford), Wisconsin, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1]   Defendants Gregg Fearday, Judith Spahn, Cesar Lopez and Ravi Gupta, M.D., have filed a motion for summary judgment and both parties have submitted briefing and evidence.   Because the record shows that Carrasco-Salazar was not denied medical care with deliberate indifference in violation of the Eighth Amendment, the court concludes that the defendants are entitled to summary judgment on his *Bivens* claim.[2]

---

[1] The complaint and previous orders issued in this case have listed the lead defendant as "Mr. Faerday."   Defendants have identified this individual as Gregg Fearday.   As reflected in the caption, above the court has adopted this spelling.

[2] In *Bivens*, the Supreme Court recognized an implied private cause of action for damages against federal officers alleged to have violated a citizen's constitutional rights.   *See Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (discussing *Bivens*).   To establish a *Bivens* claim, a prisoner must show that a constitutional violation has occurred. *Bivens*, 403 U.S. at 395-97; *see also Izen v. Catalina*, 382 F.3d 566, 570 n.3 (5th Cir. 2004) (noting that a *Bivens* action is analogous to a civil rights action under 42 U.S.C. § 1983, with the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials) (citation omitted).

UNDISPUTED FACTS[3]

Carrasco-Salazar is currently incarcerated by the United States Bureau of Prisons at the Northeast Ohio Correctional Center in Youngstown.  At all times relevant to the complaint, Carrasco-Salazar was in the custody at FCI-Oxford, where all of the defendants are employed.  Gregg Fearday and Cesar Lopez are administrators in the FCI-Oxford Health Services Unit ("HSU"); Judith Spahn is an advanced nurse practitioner; and Dr. Ravi Gupta serves as the Clinical Director of Health Services.

Carrasco-Salazar was first sentenced to federal prison in 2005.  Some time before his imprisonment, Carrasco-Salazar had been punched in the face, resulting in a broken nose.  In February 2009, Carrasco-Salazar was released from custody and returned to Mexico.  There is no evidence showing that Carrasco-Salazar sought treatment for his nose during the term of his confinement or following his release.

In May 2010, Carrasco-Salazar returned to federal custody for violating the terms of his supervised release.  On November 1, 2010, he was transferred to FCI-Oxford.

On February 16, 2011, Carrasco-Salazar was treated by Spahn in the HSU at FCI-Oxford.  During that visit, Carrasco-Salazar reported having fractured his nose some ten years before, which makes breathing through his nose at night difficult.  As an advanced nurse practitioner, Spahn examined Carrasco-Salazar and observed that he had a deviated septum, meaning that his nasal bone had shifted to one side as a result of the old

---

[3] Based on the parties' submissions and this court's procedures on summary judgment, the following facts are deemed material and undisputed.

fracture.   She also observed that his right nostril was open, while the left nostril had some swelling.

Following her examination, Spahn recommended that Carrasco-Salazar use a steroid nasal spray for three months to reduce the swelling in his left nostril.   In doing so, Spahn wanted to evaluate Carrasco-Salazar's response to the steroid nasal spray before referring him for a consultation with an ear, nose and throat specialist.   She prescribed a steroid nasal spray, Flunisolide Nasal (Nasarel), to be used two times per day for 90 days. Carrasco-Salazar picked up one bottle of the prescribed nasal spray, which contained doses for 30 days, but did not fill the rest of the prescription.

On April 15, 2011, Spahn saw Carrasco-Salazar again in the HSU.   During this appointment, Carrasco-Salazar stated that he wanted his nose "fixed" because it was painful.   Spahn examined Carrasco-Salazar's nasal cavity, noting that he was able to breathe through both sides of his nose, although his ability to breathe through the right nostril was still greater than the left.   Spahn did not observe anything of note about Carrasco-Salazar's nose that would account for his pain or that would require medical treatment.   In light of this examination, Spahn determined that no further medical treatment was necessary.

Spahn saw Carrasco-Salazar again just four days later, on April 19.   At that time, he again complained of pain in his nose, as well as headaches.   Spahn then reviewed FCI-Oxford commissary records, finding that Carrasco-Salazar had purchased no over-the-counter pain medication, even though these items were sold to inmates.

3

Carrasco-Salazar also indicated that he could not sleep because he could not breathe through his nose and that he was suffering from nose bleeds.

As to the latter complaint, Spahn observed a small amount of blood oozing from the lateral wall of Carrasco-Salazar's right nostril.   From her training and experience, Spahn knew that nose bleeds can be caused by a variety of factors, including dryness, and that nasal bleeding is not necessarily caused by a nasal fracture or a deviated septum.   Spahn also observed that Carrasco-Salazar was able to breathe through both nostrils, although he made "a poor effort breathing in and out."   Spahn further noted that a physician (Dr. Paul Harvey, Regional Medical Director for the North Central Region of BOP) had examined Carrasco-Salazar's nasal fracture in October of 2010 and determined that any surgical repair would be cosmetic in nature.   Based on that opinion and her own examination, Spahn also determined that surgical repair would be merely cosmetic, rather than medically necessary.

On January 18, 2012, Carrasco-Salazar was examined by Dr. Gupta in the HSU at FCI-Oxford.   During that appointment, Carrasco-Salazar again reported having difficulty breathing from the right nostril and some intermittent bleeding from the nose.   Dr. Gupta conducted a physical examination of Carrasco-Salazar's nose and nasal passages, observing that a nasal fracture had healed some time ago and that Carrasco-Salazar had a deviated septum.   Gupta observed no evidence of bleeding, difficulty in breathing, or obstruction of his nasal passages.   X-rays ordered by Dr. Gupta confirmed that there was no obstruction or soft-tissue swelling.

Following his examination, Dr. Gupta recommended the use of saline nasal spray to alleviate dryness, which can be a cause of nasal bleeding.   Pursuant to Bureau of Prisons policy, surgery is not authorized for cosmetic procedures or in cases where treatment would be of "little or no medical value."   Because Carrasco-Salazar's condition could be treated effectively with medication or over-the-counter products, and because surgery would be for cosmetic reasons only, Dr. Gupta determined that further medical treatment in the form of surgery was not medically necessary.

Dr. Gupta examined Carrasco-Salazar again on June 15, 2012 and February 28, 2013.   Each time, Gupta was unable to detect any blockage, difficulty breathing or bleeding.   Gupta again counseled Carrasco-Salazar on the use of over-the-counter nasal sprays, such as saline solution.   Carrasco-Salazar reportedly objected, commenting that saline sprays "don't work."   In response, Gupta reviewed the commissary records and noted that Carrasco-Salazar had never purchased any nasal sprays from the commissary.

In his pending complaint, Carrasco-Salazar claims that he is unable to breathe through his nose, unable to sleep and suffers from "major headaches" and nosebleeds as the result of his old nasal fracture.   By refusing him surgery to repair his fractured nose, Carrasco-Salazar contends that the defendants have violated his rights under the Eighth Amendment.   He seeks $25,000 in compensatory damages.[4]

---

[4] Carrasco-Salazar also requests injunctive relief in the form of surgery to fix his nasal fracture. Because Carrasco-Salazar is no longer in custody at FCI-Oxford, his request for injunctive relief must be denied as moot. *See Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012); *see also Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) ("[W]hen a prisoner who seeks injunctive relief

OPINION

The purpose of summary judgment is to determine "whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The applicable substantive law will dictate which facts are material. *Anderson*, 477 U.S. at 248; *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). A factual dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the court must view all facts in favor of plaintiff, as the non-moving party, drawing all reasonable inferences in his favor. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012). Even so, plaintiff may not simply rest on the allegations in his complaint. Rather, he "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires a trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (citing *Celotex*, 477 U.S. at 324). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

---

for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot.").

issue for trial.'" *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted)).

In January 2014, Carrasco-Salazar received instructions on filing submissions related to summary judgment.   (Dkt. # 22, *Procedure to be Followed on Motions for Summary Judgment*, attached to the pretrial conference order.)   As explained in those instructions, if a defendant files a motion for summary judgment, then the plaintiff is directed to file a response to the defendant's proposed findings of fact, a brief with opposing legal arguments, and evidentiary materials that support plaintiff's fact responses and proposals. (*Procedure*, II.A.1-3.)   The plaintiff must also propose his own facts in separate paragraphs supported by referring to the evidence in the record. (*Procedure*, II.D.1-2.)

Carrasco-Salazar filed a response to the defendants' summary-judgment motion, but he has failed to comply fully with the court's procedures. (*See* Dkt. # 22.)   In particular, Carrasco-Salazar did not respond properly to the defendants' proposed findings of fact. Where a party has not responded to a proposed finding of fact, the court may accept the proposed fact as undisputed if it is properly and sufficiently supported by admissible evidence.   *See, e.g., Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994); *Kolpien v. Family Dollar Stores of Wis., Inc.*, 402 F. Supp. 2d 971, 975 (W.D. Wis. 2005).   Although Carrasco-Salazar is proceeding *pro se*, he is still required to comply with procedural rules. *See Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) ("Although civil litigants who represent themselves ('*pro se*') benefit from various procedural protections not otherwise afforded to the ordinary attorney-represented litigant . . . , *pro se* litigants are not entitled to a general

dispensation from the rules of procedure or court imposed deadlines.") (internal citations omitted).

Here, Carrasco-Salazar contends that the defendants violated his constitutional rights under the Eighth Amendment by denying him adequate medical care in the form of surgery to correct an old injury to his nose.   Prison officials violate the Eighth Amendment if they are "deliberately indifferent to prisoners' serious medical needs."   *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).   To survive summary judgment on his Eighth Amendment claim, plaintiff must submit evidence showing (1) he was suffering from an objectively serious medical condition, and (2) that defendants were subjectively "aware of the condition and knowingly disregarded it."   *Ortiz v. Webster*, 655 F.3d 731, 734 (7th Cir. 2011) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)).

For purposes of the Eighth Amendment, serious medical conditions include:   (1) those that are life-threatening or that carry risk of permanent serious impairment if left untreated; (2) those in which the deliberately indifferent withholding of medical care results in needless pain and suffering; and/or (3) conditions that have been "diagnosed by a physician as mandating treatment."   *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997).   Deliberate indifference means that a defendant knew of the plaintiff's serious medical needs, but failed to take reasonable measures to address them.   *Farmer*, 511 U.S. at 847.   When a doctor has provided a prisoner some treatment, the question is whether that treatment is constitutionally adequate, that is, whether the doctor acted with such

blatant inappropriateness that it is reasonable to infer his actions or omissions were not actually based on medical judgment. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

On this record, Carrasco-Salazar has come forward with insufficient evidence for a reasonable trier of fact to find that he suffered from a serious medical need. Assuming for the sake of argument that Carrasco-Salazar's condition met this standard, however, he also fails to establish that he was denied constitutionally adequate care with deliberate indifference.[5]

## I.   Claims Against Spahn and Gupta

As Carrasco-Salazar concedes, Nurse Practitioner Spahn and Dr. Gupta treated him multiple times for reported problems breathing through his nose due to an old fracture. Both Spahn and Gupta determined that:   (1) his condition could be treated with prescription medication or over-the-counter remedies; and (2) surgery was not medically necessary.

Decisions about whether a patient needs surgery or any other particular type of treatment are matters of medical judgment. *Estelle*, 429 U.S. at 107 (noting that "the question whether an [x-ray] or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."). Carrasco-Salazar may

---

[5] Arguing further that Carrasco-Salazar fails to establish a constitutional violation, defendants assert that they are entitled to qualified immunity from his claims. While the court agrees, because Carrasco-Salazar fails to establish a constitutional violation here, the defense of qualified immunity need not be addressed further.

disagree with the treatment decisions made by Spahn and Gupta, "but a 'mere disagreement with the course of [an inmate's] medical treatment" does not rise to the level of deliberate indifference for the purpose of an Eighth Amendment claim. *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (citation and quotation omitted).

In that respect, Carrasco-Salazar's disagreement as a lay person with the medical judgments made by Spahn and Gupta cannot constitute a basis for deliberate indifference, because there is no showing that the treatment provided was so blatantly inappropriate that no minimally competent professional would have so responded under the circumstances. *See Duckworth*, 532 F.3d at 679; *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005); *see also McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) ("When a medical professional acts in his professional capacity, he 'may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice or standards, as to demonstrate that the person responsible actually did not base the decision on such judgment.'"). Because Carrasco-Salazar has wholly failed to demonstrate that he was subjected to blatantly inappropriate treatment or was denied adequate medical care with deliberate indifference, defendants Spahn and Gupta are entitled to summary judgment.

## II.   Claims Against Fearday and Lopez

At the time Carrasco-Salazar was in custody at FCI-Oxford, Fearday and Lopez were employed as administrators in the HSU. In that role, their duties included "making sure staff are credentialed, updating and implementing policies and procedures, preparing the

roster of clinical staff for medical coverage by providers, and replying to inmate requests and complaints." Neither Fearday nor Lopez provided medical care to Carrasco-Salazar, nor were either in any way involved in his medical treatment or decisions relating to his medical treatment. Instead, the record shows that their only material involvement was to process Carrasco-Salazar's grievances regarding medical care provided by Spahn and Gupta.

Prison administrators cannot be liable simply because they participated in addressing inmate grievances. *See Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009). Moreover, as administrative employees, Fearday and Lopez were entitled to rely on the treatment decisions made by medical staff. *See McGee*, 721 F.3d at 483; *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) ("non-medical defendants . . . can rely on the expertise of medical personnel."). The record confirms that: (1) Carrasco-Salazar's complaints were not ignored; and (2) there is no evidence that he was being mistreated. Based on this record, Carrasco-Salazar cannot demonstrate that Fearday or Lopez were deliberately indifferent to his needs. Therefore, Fearday and Lopez are also entitled to summary judgment.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by Defendants Gregg Fearday, Judith Spahn, Cesar Lopez and Ravi Gupta, M.D., (dkt. # 32) is GRANTED and this case is DISMISSED.

2. The clerk of court is directed to close this case.

Entered this 4th day of February, 2015.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge